**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. S1-4:14 CR 88 RWS(SPM) |
| | ) | |
| DIONNE GATLING (1) | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial matters in this case have been referred to the undersigned United States Magistrate

Judge pursuant to 28 U.S.C.§636(b). On October 25, 2017, this matter came before the Court for a

hearing on Defendant Dionne Gatling's Second Motion to Reconsider detention and for release pending

trial (Doc. 490), which is opposed by the United States. (Doc. 502). In support of the motion, Gatling

contends evidence that was not available at the time of his initial detention hearing disclosed during the

course of this case entitles him to pretrial release under the Bail Reform Act. In the alternative, Gatling

contends his pretrial detention, which currently exceeds 44 months, has become unconstitutionally

excessive. For the reasons set out below, I find that Defendant Gatling's Second Motion to Reconsider

detention and for release pending trial should be denied.

    I.      **PRETRIAL RELEASE UNDER THE BAIL REFORM ACT**

Under the Bail Reform Act, a judicial officer may reopen a detention hearing at any time before

trial "if the judicial officer finds that information exists that was not known to the movant at the time of

the hearing and that has a material bearing on the issue whether there are conditions of release that will

reasonably assure the [defendant's appearance] as required and the safety of any other person and the

community." 18 U.S.C. §3142(f). In determining whether there are conditions of release that will reasonably assure the safety of the community and the appearance of the defendant, the Court must consider (1) the nature and circumstances of the offense charged, including whether the offense involves a controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the person; (3) the history and characteristics of the person including, among other things, the person's character, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, record concerning appearance at court proceedings, and whether at the time of the current offense or arrest the person was on probation, on parole, or on other release pending completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §3142(g).

Under the Bail Reform Act, the United States has the burden of establishing by clear and convincing evidence that there are no conditions that will reasonably assure the safety of the community and, by a preponderance of the evidence, that there are no conditions that will reasonably assure the defendant's appearance. However, because Defendant Gatling was accused in an indictment of violating the Controlled Substances Act and faced a maximum prison term of ten years or more, the United States was entitled to a rebuttable presumption that no condition or combination of conditions would reasonably assure his appearance and the safety of the community. 18 U.S.C. §3142(e)(3). In light of this presumption, Gatling had the burden of producing some evidence that there were conditions of release which would reasonably assure he would not pose a danger to the community and would not flee. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). However, even if Gatling produced evidence sufficient to rebut the presumption, the statutory presumption would not disappear; rather, the court must consider the presumption along with all other evidence and determine whether the evidence as a whole supports pretrial detention. *Id.*

The undersigned applied the foregoing factors and ultimately granted the United States' motion for pretrial detention because, notwithstanding defendant's strong familial and community ties, an order of detention was appropriate when the rebuttable presumption was considered together with Gatling's history and personal characteristics. *See* Doc. 39. Specifically, as the detention order noted, the strength of the government's case against Gatling was strong particularly in light of law enforcement's use of Title III wiretaps. In addition, evidence in the Complaint Affidavit and assertions in the indictment suggest that defendant Gatling is the head of a drug trafficking organization that has been involved in the distribution of cocaine, heroin and methamphetamine; over time, Gatling was controlling the distribution of drugs by the DTO; members of the DTO contacted Gatling for directions; and a member of the DTO was murdered one day after investigators told Gatling's attorney that Gatling and co-conspirators were intercepted over wiretap calls. *See* Doc. 39. The detention order also took into account evidence and information indicating that Gatling had the means and the incentive to flee. *Id.*

Gatling contends that evidence disclosed by the United States in the years since the initial order of detention has a material bearing on the issue of whether there are conditions of release that will reasonably assure his appearance and the safety of any other person and the community. 18 U.S.C. §3142(f). The evidence relied on by Gatling was the subject of a *Franks* hearing that spanned nine hearing days held over a period of several months.[1] Gatling contends evidence revealed through disclosures from the United States and presented at the *Franks* hearing has significantly undermined the strength of the United States' case against him, which is one of the factors the Court considered in originally deciding to detain him. However, on January 12, 2018, I issued a Report and Recommendation recommending that Defendants' motion to suppress electronic evidence be denied. *See*

---

[1] The evidentiary hearing began on October 17, 2016, and continued October 18-21, 2016; January 9-10, 2017, January 19, 2017, and February 14, 2017. The parties requested time to file post-hearing briefs. The *Franks* motion was fully briefed and deemed submitted on September 21, 2017.

Doc. 528. In light of that ruling, I find the evidence disclosed since Defendant's detention and presented at the *Franks* hearing has not diminished the strength of the government's case. Defendant has also cited medical issues as a basis for relief. However, until such time that the undersigned is able to determine that Defendant's medical condition cannot properly be addressed while he is in custody, the existence of his medical condition is not a basis for pretrial release under the Bail Reform Act. [2]

In sum., evidence that was the subject of the *Franks* hearing, which was unknown at the time of the initial detention hearing, does not, at this juncture, favor Gatling due to the factual findings and conclusions reached following the *Franks* hearing. *See* Report and Recommendation (Doc. 528). Evidence that Gatling is currently experiencing one or more medical problems is also not a basis for release absent evidence that he is unable to be treated while in custody. As such, the new evidence presented by Gatling is not sufficient to overcome the key factors on which the initial order of detention were predicated and, thus, is not a sufficient basis under the Bail Reform Act for ordering that Gatling be released pending trial.

## II.    PRETRIAL RELEASE ON DUE PROCESS GROUNDS

Defendant Gatling argues, in the alternative, that he should be released because his pretrial detention, which currently exceeds 44 months, has become unconstitutionally excessive. The Due Process Clause of the Fifth Amendment provides that ''No person shall . . . be deprived of life, liberty, or property, without due process of law[.]'' U.S. Const., Amend. V. An individual may be detained prior to trial without violating that clause so long as that confinement does not amount to ''punishment of the detainee.'' *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). This is because, although ''[l]iberty is the norm,'' the ''government's regulatory interest in community safety can, in appropriate circumstances, outweigh

---

[2]On January 9, 2018, Gatling filed a Motion for Emergency Medical Treatment. *See* Doc. 521. However, information provided at a status hearing on January 12, 2018, made clear that, although there may have been a delay in medical attention, Mr. Gatling's medical needs are being addressed at this time.

an individual's liberty interest.'' *United States v. Salerno*, 481 U.S. 739, 748 & 755 (1987).

Neither the Supreme Court in *Salerno* nor any lower court confronted with this issue has set a bright-line limit that demarcates when continued pretrial detention violates due process. *See Salerno* 481 U.S. at 747 n.4 (noting "[w]e intimate no view as to the point at which detention in a particular case becomes excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal."). *See also United States v. Taylor*, 602 F. App'x. 713, 717 (10th Cir. 2015) (citation omitted) (noting that ''pretrial detention for a lengthy period of time may implicate due process concerns'' but '' 'the Constitution imposes no bright-line limit on the length of pretrial detention' ''); *United States v. Briggs*, 697 F.3d 98, 101 (2nd Cir. 2012)(''We have consistently held that due process places no bright-line limit on the length of pretrial detention'').

Instead, the issue of whether pretrial detention is unconstitutionally excessive is examined on a case-by-case basis. Courts have developed and applied the following non-exclusive factors when deciding whether continued pretrial detention would violate due process: (1) the non-speculative length of expected confinement; (2) the extent to which the government bears responsibility for delay; (3) the gravity of the charges; and (4) the strength of the evidence justifying detention including the existence of any rebuttable presumption for detention. *See United States v. Watson,* 475 Fed. Appx. 598, 601 (6th Cir. 2012)*; Briggs,* 697 F.3d at 101; *United States v. Hare,* 873 F.2d 796, 801 (5th Cir. 1989); *United States v. Kramer,* No. CR 16-05-BLG-SPW-TJC-4, 2017 WL 1317535 *3 (D. Montana Mar. 20, 2017); *United States v. Omar,* 157 F. Supp.3d 707, 715 (M.D. Tenn. 2016).

Although no one factor is dispositive, a review of the cases confronting due process challenges suggests that the longer the detention, the more weighty countervailing concerns must be. Where pretrial detention is very long, typically two years or more, continued detention is justified only where the government is not responsible for any significant portion of the delay and special circumstances indicate

that the defendant's release would pose an extraordinary threat to the legitimate regulatory goals requiring pretrial detention. *See Briggs,* 697 F.3d at 101 ("The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence justifying detention must be if it is to be deemed sufficient to justify the detention's continuance"); *Omar,* 157 F. Supp.3d at 715 (where defendant was detained for more than four years pending trial on sex trafficking charges, "if not the rare case where the length of pretrial detention alone amounts to a due process violation;" the case came close and "at a minimum, the extended length of pretrial incarceration call[ed] for heightened scrutiny"); *United States v. Aileman,* 165 F.R.D. at 586-89 (canvassing the law and holding where non-speculative length of detention would be at least thirty-five months, the other two factors of the due process analysis—government responsibility for delay and threats to the government's regulatory interests— needed to weigh strongly in favor of the government to justify continued detention); *United States v. Rodriguez,* No. 09-CR-331A, 2012 WL 6690197 at *11 (W.D.N.Y. Dec. 12, 2012) (canvassing cases from the Second Circuit and holding that 50 month detention of defendant charged with gang-based racketeering related to drug trafficking activity and possession of a firearm in furtherance of drug crimes presented "rare case" where length of pretrial detention alone offended due process, where the case was still many months away from being ready for trial).

### A.      Non-Speculative Length of Expected Confinement

There is no dispute the duration of detention in this case falls squarely in the "very long" category. As of the writing of this order Gatling's pretrial detention has exceeded 44 months. By the United States' estimation, March 2018 is the earliest this case will likely be ready to go to trial. As such, the earliestGatling can expect to go to trial is 4 years (48 months) after he was ordered detained pending trial. Given that the length of detention in this case is approaching a duration that some courts have found, standing alone, offend due process, this factor weighs very heavily in favor of Gatling.

**B.**      <u>The Extent to Which the Government Bears Responsibility for Delay</u>

Where, as here, the length of pretrial detention exceeds two years, courts have typically upheld detention only if the government was not responsible for any significant portion of the delay and special circumstances indicated that the defendant's release would pose an extraordinary threat to the government's regulatory interests in detention. *See Omar,* 157 F. Supp.3d at 716 (quoting *United States v. Cos*, No. CR 05-1619 JB, 2006 WL 4061168, at *6–7 (D.N.M. Nov. 15, 2006)); *Aileman,* 165 F.R.D. at 589. In determining whether a lengthy period of pretrial detention has offended due process, the Court need not determine with precision the amount of pretrial delay attributable to the prosecution or assess the extent to which the Government may have been ''at fault'' in contributing to the delay. *United States v. Gonzales Claudio,* 806 F.2d 334, 342 (2d Cir. 1986). *See also United States v. Hofstetter,* No. 3:15-CR-27-TAV-CCS,  2017 WL 4079181 at *6 (E.D. Tenn. Sept. 14, 2017) (quoting *Gonzales Claudio,* 806 F.2d at 342). Rather, it is sufficient to determine whether "even if not deserving of blame or fault, the Government bears a responsibility for a [significant] portion of the delay." *Gonzales Claudio,* 806 F.3d at 342-343. Thus, delay caused even by neutral reasons, such as strategic case management choices that foreseeably extend the case, may be attributable to the government. *Rodriguez,* 2012 WL 6690197, at *12-13; *Hofstetter,* 2017 WL 4079181, at *7.

In ruling on a similar motion brought by Gatling's co-defendant, Timothy Rush, the undersigned previously found that the United States bears most of the responsibility of delay. *See* Docs. 511 & 514. The analysis in Gatling's case is identical; as such, the undersigned adopts and, by this reference, incorporates the analysis set out in the order entered in *United States v. Timothy Rush* (2), Case No. 4:14CR88RWS (Doc. 511, at 9-23). In sum, for the reasons set forth in the Report and Recommendation related to Timothy Rush's motion for pretrial release, I find that strategic choices made by the government as well as issues with access to discovery at the jails resulted in significant delays of 12

months or more. Because the record before this Court demonstrates that the government was responsible

for significant delay, due process requires that Defendant Gatling be released unless special

circumstances indicate that his release would pose an extraordinary threat to the government's

regulatory interests in pretrial detention. *See Briggs,* 697 F.3d at 101.

C.     **The Magnitude of the Threat Pretrial Release Poses to the Government's
       Regulatory Interests in Pretrial Detention.**

In determining whether the magnitude of the threat pretrial release poses to the government's

regulatory interests in pretrial detention warrants continued detention, like other courts that have

wrestled with this issue, I begin the analysis by considering the three regulatory interests *Salerno* held

are served by pretrial detention:

> (1) protecting the integrity of the trial process (by, for example, preventing a defendant from
> attempting to intimidate witnesses, jurors, or others involved in the prosecution), (2)
> preventing danger to the community, and (3) assuring that the defendant is present for trial,
> and if convicted, for sentencing (the risk of flight factor).

*Aileman,* 165 F.R.D. at 595.

Even when the expected lenghth of detention is great and the government is responsible for

signficant delay, there is no due process violation where there is evidence that defendant's release, even

with restrictive conditions, would pose an "extraodinary threat" to the government's above-referenced

regulatory interests in pretrial detention. Put another way, there is no due process violation when, as in

this case, the evidence establishes that continued detention is for regulatory, as opposed to puntive,

purposes and a "rational purpose may be assigned to [continued detention]." *United States v. El-Hage,*

213 F.3d 74, 80-81 (2nd Cir. 2000).

The evidence presented in the case of Gatling establishes that continued detention would serve

regulatory and not punitive purposes and that there is a rational purpose for continued detention,

including the protection of witnesses. Unlike defendant Timothy Rush, the government has presented

substantial evidence that releasing Defendant Gatling would pose an extraordinary threat to the government's regulatory interests in pretrial detention. Specifically, Gatling is accused of being a drug king pin charge (continuing criminal enterprise) and is charged with murder. In addition, during the *Franks* hearing the United States presented evidence suggesting that one or more relatives of Gatling made threatening telephone calls to a government informant. The United States also presented evidence that, while he was in custody, Gatling directed a relative to make a posting to social media shortly before an evidentiary hearing to intimidate a witness scheduled to testify at the hearing.

The foregoing evidence very strongly suggests that continued detention is necessary to ensure that Defendant Gatling is not able to directly or, through the use of third parties, indirectly threaten or intimdate witnesses. Evidence presented at the initial detention hearing also suggested that Defendant Gatling was a drug king pin who had the means (through a large network of associates) and resources to flee. While Defendant Gatling's resources may have dwindled, there is no evidence that his network has dwindled. As such, continued detention is a rational and reasonable basis for ensuring that Gatling will not flee prior to trial.

For all of the foregoing reasons, continuing Defendant Gatling's pretrial detention does not violate due process because continued detention is necessary to protect the government's legitimate regulatory interests in pretrial detention.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Dionne Gatling's Second Motion to Reconsider detention and for release pending trial under the Bail Reform Act (Doc. 490) is **DENIED.**

**IT IS HEREBY RECOMMENDED** that Defendant Dionne Gatling's request to be released pending trial on grounds that Defendant's continued detention pending trial would violate due process (Doc. 490) be **DENIED**.

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *See Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of January, 2018.